**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDWARDO STULTZ, CDCR #AR-0732, <br><br>            Plaintiff, <br><br>    vs. <br><br> CALIFORNIA DEP'T OF CORRECTIONS AND REHABILITATION, CALIPATRIA, CALIPATRIA WARDEN, CALIPATRIA MEDICAL STAFF, CENTINELA, CENTINELA WARDEN, CENTINELA MEDICAL STAFF, JOHN DOES, et al., JANE DOES, et al., <br><br>            Defendants. | Case No.: 3:25-cv-2840-AJB-DDL <br><br> **ORDER:** <br><br> **(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [Doc. No. 2] AND** <br><br> **(2) DISMISSING COMPLAINT WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)** |

## I.     INTRODUCTION

Edwardo Stultz ("Stultz" or "Plaintiff"), a state inmate proceeding *pro se*, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, along with a Motion to Proceed *In Forma Pauperis* ("IFP"). (Doc. Nos. 1; 2.) In his Complaint, Stultz alleges Defendants violated his civil rights by failing to protect him, requiring him to take COVID tests which were improperly administered, and tampering with his mail. (*See* Doc. No. 1.) For the

1

reasons explained below, the Court **GRANTS** Stultz's IFP motion and **DISMISSES** the Complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## II.   IFP MOTION

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of all assets [they] possess[,]" as well as "a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. §§ 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). Using this financial information, the court "assess[es] and when funds exist, collect[s], … an initial partial filing fee," which is "calculated based on 'the average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. §§ 1915(b)(1)–(2)). In short, while prisoners may qualify to proceed IFP without having to pay the full statutory filing upfront,

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

25-cv-2840-AJB-DDL

they remain obligated to pay the full amount due in monthly payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. §§ 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

In support of his IFP Motion, Stultz provided a copy of his Prison Certificate and trust account, which reflect an average monthly balance of $85.25, average monthly deposits of $71.66; and an available account balance of $0.00. (Doc. No. 3 at 4.) Accordingly, the Court **GRANTS** Stultz's's IFP motion and assesses no initial payment. Stultz will be required to pay the full $350 filing fee in installments which will be collected from his trust account as set forth in 28 U.S.C. § 1915(b)(2).

## II.    SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A.    Standard of Review

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court must screen a prisoner's IFP complaint and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed-me accusation[s]" fall short of meeting this plausibility standard. *Id.*

### B.    Plaintiff's Allegations

In his Complaint, Stultz states that in 2018 he was wrongfully convicted of murdering "Johnny Rodriguez." (Doc. No. 1 at 16.) After his sentencing, Stultz was taken

3

into the custody of the California Department of Corrections and Rehabilitation ("CDCR"). He was initially sent to Wasco State Prison "Reception," where he was classified. (*Id.*) He was then transferred to Calipatria State Prison ("CSP") in February of 2019. (*Id.*)

After arriving at CSP, Stultz "discovered" that that "employees that worked in the prison as custody staff" were "related to . . . the deceased victim" in Stultz's criminal case. (*Id.* at 17.) In March of 2019, a correctional officer "made a verbal threat" against Stultz in which he referenced the family of the victim and told Stultz he would "never allow [him] the option to prove his innocence." (*Id.*)

At some point, Stultz wrote to the California Innocence Project regarding his "wrongful conviction." (*Id.*) Stultz alleges this, and other mail which was related to his criminal conviction and was supposed to remain confidential, was "tampered with." (*Id.*)

Shortly thereafter a correctional officer told Stultz "he knew Stultz was a rat" and he was going to tell all the inmates on the yard. (*Id.* at 18.) Later, Stultz lost the privilege to use recreational equipment and therefore was "forced to run laps" for exercise. (*Id.*)

Sometime later, Stultz spoke to Lt. Newmen[2] at CSP and expressed his concern about the "close proximity of the deceased victim's family," but Newmen failed to "enable a safe path to rehabilitation" for Stultz. (*Id.* at 19.) On another occasion, Stultz asked the CSP Classification Coordinator to "help enable a safe transfer" because he "knew he was being targeted by custody officers" connected to the victim's family. (*Id.*)

In March of 2020, "Defendant 2" referenced "physical objects/evidence" in Plaintiff's criminal court case that "contained DNA" and told Plaintiff he was "fucked." (*Id.* at 19.) Plaintiff states he was subject to "verbal and inappropriate statements that [he] was a snitch" but it is unclear from the facts alleged in the Complaint, who made these statements. (*See id.* at 21.)

---

[2] Stultz does not name Newmen as a defendant.

25-cv-2840-AJB-DDL

Stultz alleges that during his time at CSP he was "forced" to take COVID tests, during which "medical staff displayed bias, unprofessional conduct and mishandle[ed] his DNA." (*Id.* at 20.) On February 4, 2021, after he was exposed to COVID, Stultz refused to be tested "because he knew medical staff and correctional officers were conspiring to tarnish his life." (*Id.* at 21.) That same day, Stultz told Sergeant Reyes[3] he was concerned about staying at the same prison of Johnny Rodriguez's family." (*Id.*) But Reyes disregarded his concerns. (*Id.*)

Stultz states that on October 16, 2021, while in custody at CSP, he was "battered" by four inmates. He alleges this was because he "reported" the Rodriguez family and medical personnel. (*Id.* at 22.) After the assault, Plaintiff mas moved to administrative segregation for his safety "pending transfer." (*Id.*)

Plaintiff was transferred from CSP to Centinela State Prison ("CEN") on November 23, 2021. (*Id.*) On December 4, 2021, Stultz was again "subject to COVID-19 testing" and during the process, his DNA was "mishandl[ed]" (*Id.* at 23.)

On December 28, 2021, "Defendant 2 made it clear he would utilize [a] COVID swab to plant evidence in a case where . . . Stultz was wrongfully convicted." (*Id.* at 21.) On January 30, 2022, a "med tech" at CSP[4] "obtained a COVID-19 swab [from Stultz] and never documented [the] procedure to establish a safe chain of custody." (*Id.* at 20.)

Stultz states that on October 10, 2023, he "suffered from severe puncture wounds and was badly beaten," requiring him to be sent to the "ER." (*Id.* at 24.) It is not clear where Stultz was housed at that time, and he does not elaborate on the specific circumstances of the incident. (*See id.*)

---

[3] Stultz does not name Reyes as a Defendant.

[4] While in one portion of the Complaint Plaintiff states he was at CSP in December of 2021 and January of 2022, *see* Doc. No. 1 at 20, 21, in another portion, Plaintiff states he was transferred from CSP to CEN on November 23, 2021. *Id.* at 22.

25-cv-2840-AJB-DDL

At some point, Stultz was housed at "Cois Byrd Detention Center."[5] (*Id.*) An inmate who was placed in Stutz's cell there "confessed" that he was an "agents [sic] informant." (*Id.* at 25.) While at SBDC, Stultz was "refused a shower and a blanket." (*Id.*)

### C.    Discussion

In his Complaint, Stultz names the following Defendants: CDCR, CSP, CEN, CSP Warden, CEN Warden, CSP Medical Staff, CEN Medical Staff, "John Doe, et al." and "Jane Doe, et al." (Doc. No. 1 at 1, 11–13.) Stultz raises claims under 42 U.S.C. § 1983, alleging violations of his Eighth Amendment, First Amendment, and Fourteenth Amendment rights. (*Id.* at 28, 32, 33.) He also raises pendent state law claims, including "medical negligence," "fraud," and intentional infliction of emotional distress. (*Id.* at 29–31.) Stultz seeks compensatory and punitive damages. (*Id.* at 34.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by "a person" acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Federal courts may also exercise supplemental jurisdiction over state law claims, but a plaintiff must first have a cognizable claim for relief under federal law. *See* 28 U.S.C. § 1367.

### 1.    State Agency Defendants

First, Defendants CDCR, CSP and CEN must be dismissed. The Eleventh Amendment prohibits federal courts from hearing a § 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons (such as CSP and CEN), absent "a waiver by the state or a valid congressional override." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999); *see also Franceschi v.*

---

[5] It is unclear when Stultz arrived at Cois Byrd Detention Center, which is a local jail facility in Riverside County, California. Allegations in the Complaint indicate Stultz was in custody there on or before March 11, 2023, *see* Doc. No. 1 at 25, until March 14, 2023, when he was "transferred back to Wasco State Prison" and then ultimately "relocated" to CEN. *See id.* at 26.

25-cv-2840-AJB-DDL

*Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) ("The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies."). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court." *Dittman*, 191 F.3d at 1025–26; *see also Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding CDCR and California Board of Prison Terms entitled to Eleventh Amendment immunity).

Here, because CDCR, CSP and CEN are not "persons" subject to suit under § 1983, and instead are agencies and sub-agencies of the State of California, they are immune from suit under the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (holding that Eleventh Amendment immunity extends to state agencies); *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) ("[T]he State is not a 'person' for purposes of § 1983."); *see also Dragasits v. California*, 2016 WL 680947, at *3 (S.D. Cal. 2016) ("The State of California's Department of Corrections and Rehabilitation and any state prison, correctional agency, sub-division, or department under its jurisdiction, are not 'persons' subject to suit under § 1983."). The Court therefore dismisses Defendants CDCR, CSP and CEN. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b).

### 2.   Warden Defendants

Next, Stultz names as Defendants, the "Wardens of Calipatria" and the "Wardens of Centinela" who held the positions during the "events described in th[e] complaint." (Doc. No. 1 at 11, 12.) Supervisory personnel are generally not liable under § 1983 for the actions of their employees. *See Iqbal*, 556 U.S. at 676. When a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). To do so, a plaintiff must allege facts indicating that the supervisory defendant either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy

"so deficient that the policy itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Here, Stultz has not alleged any facts indicating that the CSP or CEN Wardens personally participated the alleged deprivations of constitutional rights, knew of the violations and failed to act to prevent them, or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *See Hansen*, 885 F.2d at 646. In the absence of any such allegations, Stultz has failed to state a claim against Wardens of CSP or CEN. *See Iqbal*, 556 U.S. at 678; 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b).

### 3. "Medical Staff" Defendants

To the extent Stultz names "Calipatria Medical Staff" and "Centinela Medical Staff" as Defendants, he fails to state a claim because he does not make clear what specific conduct is attributable to any specific individual. As noted above, to state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. *See Ivey*, 673 F.2d at 268. Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

"Generic identifiers" such as "Centinela Medical Staff" and "Calipatria Medical Staff" are insufficient to link a specific defendant's actions to the alleged deprivation. *See Wright v. Pleasant Valley State Prison Med. Staff*, 2009 WL 546214, at *2 (E.D. Cal. Mar. 4, 2009) ("Generic identifiers such as 'PVSP Medical Staff,' 'Chief Medical Staff,' and 'Medical Doctors' (without surname specificity) are insufficient to link a specific defendant to offending actions."). Therefore, Stultz has failed to state a claim against Defendants "Centinela Medical Staff" and "Calipatria Medical Staff." *See Iqbal*, 556 U.S. at 678; 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b).

### 4. Doe Defendants

Stultz also names "John Doe, et al." and "Jane Doe, et al." as Defendants, but again fails to provide sufficient facts to identify any individual Doe Defendants. First, the use of fictitiously named Doe defendants, such as "John Doe" and "Jane Doe," is generally not favored. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). However, amendment may be permitted to substitute true names for fictitiously named defendants. *Merritt v. Cnty. of L.A.*, 875 F.2d 765, 768 (9th Cir. 1989).

Here, Stultz has failed to make any specific allegations against any clearly and separately identified "John Doe" or "Jane Doe." Instead, he references unidentified defendants collectively in some portions of the Complaint, and in other portions, he references a "Doe" but does not provide any distinguishable identifier. Stultz also references "John Doe, et al.," and "Jane Doe, et al." as to both medical staff and correctional staff. (*See* Doc. No. 1 at 12, 13.) In other portions of the Complaint, he references "Defendant 1" or "Defendant 2." (*See id.* at 18.) Stultz also refers to two different groups listed as "Does 1–5," one from CSP and another from CEN, but fails to provide information necessary to distinguish between them. (*Id.* at 12, 13.) The lack of clarity and consistency makes it impossible for the Court to determine what allegations relate to which "Doe" Defendant.

Even where a plaintiff is unaware of a particular defendant's name, he must still allege facts specific to each Doe defendant. As such, Plaintiff must name <u>each</u> Doe

25-cv-2840-AJB-DDL

Defendant individually and separately (i.e., Doe 1, Doe 2, etc.) and clearly specify what each unknown individual did. A plaintiff "must allege sufficient facts to show how each doe defendant individually violated his constitutional rights. If he does so, he may be given leave to obtain the names of doe defendants during discovery and seek leave to amend to name those defendants." *Finefeuiaki v. Maui Police Dep't*, 2018 WL 4839001, at *3 (D. Haw. Oct. 4, 2018) (citing *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999)). Because Stultz has not clearly identified any specific action taken by any separately identifiable Doe defendant, he fails to state any claim against any unnamed Defendant and as such, the Court dismisses all Doe Defendants. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b).

### 5.   Dismissal With Leave to Amend

For the foregoing reasons, the Complaint is **DISMISSED** in its entirety without prejudice for failure to state a plausible claim against any Defendant. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b). Plaintiff is **GRANTED** leave to amend. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.")

In amending his pleading, Stultz should consider the following legal standards applicable to his claims, as discussed below. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded on other grounds by statute as stated in Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (stating a court should briefly explain a *pro se* litigant's pleading deficiencies when dismissing claims with leave to amend).

### a.   Eighth Amendment: Failure to Protect

Stultz appears to allege his Eighth Amendment rights were violated when he was housed at a correctional facility where "custody staff" who were "related to . . . the deceased victim [in Stultz's] criminal case" worked. (Doc. No. 1 at 16–17, 28.) The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials

25-cv-2840-AJB-DDL

have a duty to protect prisoners from violence at the hands of other prisoners. *Id*. at 833; *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). But the failure of prison officials to protect inmates from attacks by other inmates, or from dangerous conditions at the prison, violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id*. at 837.

Neither negligence, nor gross negligence, warrant liability under the Eighth Amendment. *Id*. at 835–36 & n.4.  An "official's failure to alleviate a significant risk that he should have perceived but did not, . . . cannot under our cases be condemned as the infliction of punishment." *Id*. at 838. Instead, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)).

In his Complaint, Stultz alleges that at some unspecified time while he was confined at CSP, he "experienced . . . verbal and inappropriate statements" from staff implying that he was a "snitch." (Doc. No. 1 at 21.) On February 4, 2021, Stultz told "Sgt. Reyes" that he feared being held at CSP because he believed staff had ties to his victim's family, but Reyes ignored his concerns. (*Id.*) On October 16, 2021, Stultz states he was "battered by 4 inmates."[6] (*Id.*) He also alleges that on October 10, 2023, he "suffered from severe puncture wounds and was badly beaten" but provides no additional facts regarding the incident. (*Id.* at 24.) While Plaintiff appears to assert these attacks were the result of his reporting

---

[6] After the October 19, 2021 incident, Stultz was housed in administrative segregation for his safety until he was transferred to CEN on November 23, 2021. (Doc. No. 1 at 22.)

25-cv-2840-AJB-DDL

concerns about officers having ties to the "Rodriguez family," to state a plausible claim, Stultz must allege sufficient facts to show a causal connection or link between the actions of the defendant(s) and the deprivation alleged to have been suffered. *See Rizzo*, 423 U.S. at 373–75. As currently pleaded, however, Stultz's allegations are vague, conclusory, and insufficient to state an Eighth Amendment claim.[7] *See Iqbal*, 556 U.S. at 678; *Ivey*, 673 F.2d at 268.

### b.    First Amendment: Mail Tampering and Access to Courts

Stultz alleges his legal mail related to his criminal case was "tampered" with and some of his legal materials were "confiscated." (Doc. No. 1 at 32.) Inmates have a right under the First and Sixth Amendments to have their properly marked legal mail opened in their presence, and prison officials may not read their legal mail. *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017) (concluding that the First Amendment protects a prisoner's right to be present when his civil legal mail is opened); *Mangiaracina v. Penzone*, 849 F.3d 1191, 1196 (9th Cir. 2017) (concluding that pretrial detainee had a Sixth Amendment right to privately confer with counsel and not have legal mail opened outside his presence); *Nordstrom v. Ryan*, 762 F.3d 903, 910–11 (9th Cir. 2014) (concluding that the Constitution prohibits reading ongoing attorney-client correspondence). To state a claim, however, a plaintiff must "clarify who sent the mail or whether it was properly marked as 'legal mail.'" *Hayes*, 849 F.3d at 1211. Additionally, a plaintiff must allege more than mere negligence. *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989)

---

[7] To the extent Plaintiff also alleges unspecified Defendants "conspired" to violate his Eighth Amendment rights (*see* Doc. No. 1 at 32), he cannot state a claim because he has not adequately alleged an Eighth Amendment violation. *See Gillespie*, 629 F.2d at 641 ("To state a cause of action under [42 U.S.C.] § 1985(3), a complaint must allege (1) a conspiracy; (2) to deprive any person or class of persons of the equal protection of the laws; (3) an act done by one of the conspirators in furtherance of the conspiracy; and (4) a personal injury, property damage, or deprivation of any right or privilege of a citizen of the United States."); *see also Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient.").

25-cv-2840-AJB-DDL

("Stevenson has not shown, based on this record, that Koskey's conduct concerning plaintiff's mail rose beyond the level of mere negligence.").

To the extent Stultz states that "on numerous [occasions] [his] legal mail was opened and tampered with" (*see* Doc. No. 1 at 17–18), his allegations as currently pleaded are conclusory and speculative. Although Stultz states the mail in question was related to his criminal case, he fails to clearly specify the items of mail he alleges were opened or tampered with, who did so, and when. Nor does Stultz allege the items were properly marked as "legal mail." *See Hayes*, 849 F.3d at 1211 (affirming dismissal of prisoner's claim regarding "legal mail" because the plaintiff had not met his burden of plausibly alleging that the item opened outside his presence was protected legal mail and properly marked as such); *see also Mangiaracina*, 849 F.3d at 1196 (concluding the district court properly dismissed the plaintiff's claim at the pleading stage when he failed to allege the envelopes were properly marked as legal mail).

Stultz also states he could "not properly argue his case" because some of his legal materials were "confiscated." (Doc. No. 1 at 32.) To the extent he seeks to raise a First Amendment access to the courts claim, he must allege facts showing that he suffered an "actual injury" as a result of a specific defendant's alleged actions, by explaining how the challenged official acts or omissions hindered his efforts to pursue a nonfrivolous legal claim. *Lewis v. Casey*, 518 U.S. 343, 351–55 (1996). Actual injury may be shown if the alleged shortcomings "hindered his efforts to pursue a legal claim," such as having his complaint dismissed "for failure to satisfy some technical requirement," or if he "suffered arguably actionable harm that he wished to bring before the courts." *Id*. at 351. As currently pleaded, Stultz fails to adequately allege he suffered actual injury.

### c.    Due Process

Stultz appears to raise a due process claim, but it is difficult to parse. Stultz states Defendants "violated due process by continuously forcing Plaintiff to be in confinement where [Plaintiff] was safeguarded by state policy, to be housed in a different prison facility." (Doc. No. 1 at 33.) It is well settled that prisoners have no due process right to

25-cv-2840-AJB-DDL

placement in any particular prison, to any security classification, or to any particular housing assignment.[8] *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (finding no liberty interest protected by the Due Process Clause is implicated in a prison's reclassification and transfer decisions); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citation omitted). Thus, Stultz has not stated a due process claim as currently pleaded.

### d.    State Tort Claims

Stultz also raises state tort claims including "medical negligence,"[9] "fraud," and intentional infliction of emotional distress. (*See* Doc. No. 1 at 29–31.) Generally, state law claims are not sufficient to state a claim for relief under § 1983, which requires a deprivation of federal constitutional or statutory right. *See Paul v. Davis*, 424 U.S. 693 (1976). As noted above, federal courts may exercise supplemental jurisdiction over state law claims, but a plaintiff must first have a cognizable claim for relief under federal law. *See* 28 U.S.C. § 1367.

To the extent Stultz may seek to allege a pendent state tort claim for "medical negligence," he must allege sufficient facts to support the following elements: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Turpin v. Sortini*, 31 Cal. 3d 220,

---

[8] As discussed above, however, inmates have an Eighth Amendment right that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer*, 511 U.S. at 832

[9] Claims of negligence and medical malpractice do not rise to the level of a constitutional violation. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment.").

25-cv-2840-AJB-DDL

229–30 (1982).

Next, "[t]he elements of fraud are misrepresentation, knowledge of falsity, intent to induce reliance on the misrepresentation, justifiable reliance on the misrepresentation, and resulting damages." *Reeder v. Specialized Loan Servicing LLC*, 52 Cal. App. 5th 795, 803 (2020) (citing *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996)).

The elements for a claim of intentional infliction of emotional distress under California law are: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress." *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1376 (2010) (quoting *Agarwal v. Johnson*, 25 Cal. 3d 932, 946 (1979)). Conduct is "outrageous if it is 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.'" *Simo v. Union of NeedleTrades, Indus. & Textile Emps.*, 322 F.3d 602, 622 (9th Cir. 2002) (quoting *Saridakis v. United Airlines*, 166 F.3d 1272, 1278 (9th Cir. 1999)).

The Court further notes that under the California Tort Claims Act ("CTCA"), set forth in California Government Code §§ 810 *et seq.*, a plaintiff may not bring a suit for monetary damages against a public employee or entity unless the plaintiff first presented the claim to the California Victim Compensation and Government Claims Board ("Board"), and the Board acted on the claim, or the time for doing so expired. "The Tort Claims Act requires that any civil complaint for money or damages first be presented to and rejected by the pertinent public entity." *Munoz v. California*, 33 Cal. App. 4th 1767, 1776 (1995). Compliance with this "claim presentation requirement" constitutes an element of a cause of action for damages against a public entity or official. *State v. Super. Ct. (Bodde)*, 32 Cal. 4th 1234, 1244 (2004). Thus, state tort claims included in a federal action filed pursuant to 42 U.S.C. § 1983, may proceed only if the claims were first presented to the state in compliance with the claim presentation requirement. *See id*. at 1239; *see also Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988) (affirming district court's dismissal of state tort claims for failure to allege compliance with

California tort claim procedures). In his Complaint, Stultz fails to allege compliance with the CTCA as to any of his state tort claims.

In sum, Stultz should consider the above standards and identified deficiencies in preparing any amended pleading. *See Noll*, 809 F.2d at 1448 ("The requirement that courts provide a pro se litigant with notice of the deficiencies in his or her complaint helps ensure that the pro se litigant can use the opportunity to amend effectively.")

## IV.    CONCLUSION AND ORDER

Based on the foregoing, the Court:

1.    **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (Doc. No. 2).

2.    **ORDERS** the Secretary of the CDCR, or his designee, to collect the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). All payments must clearly identify the name and case number assigned to this action.

3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, by U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4.    **DISMISSES** the Complaint in its entirety without prejudice for failure to state a claim against any Defendant pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1).

5.    **GRANTS** Plaintiff **sixty (60)** days leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order. Plaintiff's Amended Complaint must be complete by itself without reference to his original Complaint. *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be

"considered waived if not repled").

If Plaintiff fails to timely file a First Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated:  March 5, 2026

Hon. Anthony J. Battaglia
United States District Judge

25-cv-2840-AJB-DDL