**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDWARDO STULTZ, CDCR #AR-0732, Plaintiff, vs. FIDENCIO GUZMAN, MS. SELGADO, MR. RUIZ, MR. RODIRIGUEZ, BRITTANIE MORENO, WARREN MONTGOMERY, ARTURO ARIAS, MIGUEL ZENDEJAS, MR. NEWMAN, MR. LARA, MR. PEREZ, MR. ESTRADA, BRIAN SKAGGS, MR. REYES, Defendants. | Case No.: 25-cv-02840-AJB-DDL<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT WITHOUT PREJUDICE FOR FAILURE TO COMPLY WITH FEDERAL RULE OF CIVIL PROCEDURE 8 AND FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)** |

## I. INTRODUCTION

Plaintiff Edwardo Stultz ("Plaintiff" or "Stultz") is a state inmate proceeding *pro se* and *in forma pauperis* ("IFP") with a civil rights action. (Doc. No. 5.) The Court previously dismissed Stultz's original complaint for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and granted him leave to amend. (*See* Doc. No. 4.) Stultz has now filed a First Amended Complaint ("FAC") in which he alleges violations of his constitutional rights pursuant to 42 U.S.C. § 1983 and state tort law. (Doc No. 5.) For the reasons discussed below, the Court dismisses the FAC for failure to state a claim.

## II. SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2) & 1915A(b)

### A. Standard of Review

As with his original complaint, because Plaintiff is proceeding IFP, the Court must screen the FAC pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint to "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

### B. Plaintiff's Allegations

Plaintiff's FAC includes events which occurred from 2019 through 2024, and which took place at four different institutions: Calipatria State Prison ("CAL"), Centinela State Prison ("CEN"), Cois Byrd Detention Center ("CBDC") (a Riverside County jail), and California Correctional Institution ("CCI"). (*See generally* Doc No. 5.)

Stultz alleges that sometime in 2019, while he was incarcerated at CAL, he learned that "correctional officer employees that worked in the prison as custody [staff] were related to the deceased victim" in Stultz's criminal case.[1] (*Id.*) In March of 2019, Defendant

---

[1] Stultz does not clearly identify which specific officers were "related" to the victim in his criminal case and does not specify the precise nature of the purported relations. Stultz states, however, that he was

Zendejas, a CAL correctional officer, told Stultz he "was gonna face severe struggles such as being battered and badly hurt." (*Id.*) At some point, Stultz was prevented from using recreational equipment by other inmates and was instead "forced to run laps." (*Id.* at 22.) At an unspecified time, Zendejas "expressed. . . his intention[] to be indifferent to Plaintiff." (*Id.* at 23.) Zendejas spread "false narratives" about Stultz's criminal case, and suggested Stultz was a "rat." (*Id.*)

In October of 2019, Plaintiff discussed his situation with Defendant Newmen, a CAL correctional officer. Stultz told Newmen he wanted to be transferred due to his concerns about his "encounters with staff and inmates" and his fear that he would be harmed. (*Id.* at 24.) He noted that inmates regularly taunted him and had also prevented him from using recreation equipment. Newmen "ignored" Plaintiff's concerns. (*Id.*)

In December of 2019, Stultz sought the help of Defendant Lara, a CAL correctional counselor. (*Id.* at 25.) Stultz asked Lara to "put him up for transfer" because of the "over familiarity" some correctional staff had with Stultz's criminal case. (*Id.* at 25.) But Lara "ignored" Plaintiff's request. Stultz continued to be "purposely isolated by inmates for Defendants." (*Id.*) Inmates also continued to prevent him from using recreational equipment. (*Id.*)

In March of 2020, Defendant Perez, a CAL correctional officer, accused Stultz of "being a 'rat.'" (*Id.* at 26.) Perez also referenced DNA evidence and an "objective to tamper with evidence so that Plaintiff would not see any relief" in his criminal case. (*Id.*) Perez further stated that Plaintiff was "trash" and "[had] nothing coming but an ass whoopin." (*Id.*) Stultz alleges Perez "made it clear" that he intended "to retaliate on [Stultz's] life [sic] by enabling 'medical staff' to mishandle [Stultz's] DNA under [the] pretext of COVID 19 swabs." (*Id.* at 27.)

At some unspecified time, Defendant Estrada, who was on the "medical staff" at

---

wrongfully convicted of killing the victim in his criminal case. (*Id.* at 21.)

CAL, came to Plaintiff's cell and "rudely" demanded a COVID-19 swab. (*Id.* at 28.) Plaintiff "later discovered there was no record that this testing existed." (*Id.*) Stultz further alleges Zendejas had "illegal access to [his] COVID-19 swab" and that Estrada failed to prevent "illegal access" to his DNA. (*Id.*)

On or about February 4, 2021, Stultz tested negative for COVID-19. *Id.* at 29. But he was nonetheless moved to another housing unit for quarantine. (*Id.*) While in this unit, Stultz was "isolated" and treated unfairly. He "refused his COVID testing" but was "forced to test periodically." (*Id.*) At some point, Stultz asked Defendant Reyes, a CAL correctional staffer, to help him get transferred to another facility because Stultz "feared his stay at [CAL] was just continuously endangering his life." (*Id.*) Reyes, however, failed to help Stultz. (*Id*. at 29–30.)

At about 8:00 p.m. on October 16, 2021, Stultz was released from his housing unit for "pill line." (*Id.* at 31.) He went to the "medical window" and as he was returning to his housing unit, other inmates "started to voice that according to [CAL] facility staff [Plaintiff was] nothing but a rat for reporting [Defendant] Zendejas." (*Id.*) Shortly thereafter, four inmates attacked Plaintiff and "assaulted [him] with their fist[s] and feet." (*Id.*) Several custody staff eventually stopped the "attack," but Plaintiff was exposed to pepper spray in the process. (*Id.*) After the incident, Plaintiff was moved to administrative segregation. (*Id.*)

On November 23, 2021, Stultz was transferred from CAL to CEN. (*Id.* at 32.)

On December 4, 2021, Stultz (now housed at CEN), was at the podium in the building where COVID-19 tests were performed. (*Id.*) Defendant Rodriguez, a CEN correctional officer, was in the area. After the swab was taken from Plaintiff, it was put in a clear container by an unidentified medical staffer.[2] (*Id.* at 32–33.) The staffer then handed the container to Rodriguez. (*Id.* at 33.) This "compromised" Stultz's DNA because the sample was then "outside the chain of custody of medical [staff]." (*Id.*) Stultz alleges

---

[2] Although this staffer is not named in the factual allegations, Stultz refers to her as a Defendant. (*See id.* at 33.)

Rodriguez "unlawfully intruded on Stultz's biological material." (*Id.*)

In November of 2022, Stultz was transferred to the custody of the Riverside County Sheriff's Department and placed in detention at the CBDC in order to attend court proceedings related to his criminal conviction. (*Id.* at 34.) At some point during court proceedings, he reported "Family Zendejas" and Rodriguez for "intrusion of [his] DNA under pretext of COVID-19 [testing]," though it is not clear to whom he reported this. (*See id.*)

In February of 2023, Plaintiff was moved to a different dayroom at CBDC. At some point, Plaintiff also received a cellmate. (*Id.* at 35.) The cellmate told Plaintiff that the Riverside County Sheriff's Department staff allowed him to commit crimes, including assaulting other inmates. (*Id.*)

On March 10, 2023, Stultz's cellmate at CBDC attacked him, beating him with his fists and stabbing him with a metal knife. (*Id.*) During the incident, the cellmate stated that Stultz had "fucked up for reporting the [family of the victim in Stultz's criminal case]." (*Id.*) Stultz was taken to the hospital where he received medical attention. The next day, Stultz returned to CBDC and was placed on the sensitive needs yard ("SNY") until he was transferred from CBDC, back to the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Stultz was initially sent to Wasco State Prison, where he was "subject to reclassification" and placed in administrative segregation for over two months. (*Id.* at 38.)

On May 16, 2023, Stultz was transferred back to CEN and placed in the restricted housing unit ("RHU"). (*Id.*) He was classified as non-discipline status ("NDS") and as such was entitled to receive "quarterly packages" and daily phone calls, among other things while being housed in the RHU. (*Id.* at 39.) When Stultz arrived in the RHU on May 16, 2023, along with two other inmates, the other inmates received electronic tablets but Stultz did not. This prevented Stultz from making daily phone calls. (*Id.*) At some unspecified time, Stultz overheard Defendant Selgado, a CEN correctional counselor, state that Stultz was "nothing but a piece of shit," and that he was "supposed to die" at CBDC. (*Id.* at 40.)

Selgado also stated she did not want Stultz to have his privileges in RHU. (*Id.*)

On June 9, 2023 Stultz was taken to be interviewed by officers Ruiz and Burke of the Investigative Services Unit ("ISU"). Burke questioned Stultz briefly but then turned off the recording device and left the room. (*Id.* at 38.) Defendant Ruiz then attempted to "entrap" Stultz with false allegations of gang association. Stultz told Ruiz to stop questioning him without a recording device. (*Id.* at 38–39.)

At some unspecified time, Plaintiff was transferred from CEN to CCI. Plaintiff alleges that on July 23, 2024, a CCI correctional officer witnessed Stultz sign and seal a letter labeled "confidential," which was addressed to the California Supreme Court and was related to an application for writ of habeas corpus. (*Id* at 41.) Stultz alleges that at some point thereafter, Defendant Skaggs, a CCI officer assigned to the mailroom, threw away the letter. (*Id.* at 41.)

On August 29, 2024, CCI received a package containing court transcripts related to Stultz's criminal proceedings. (*Id.* at 43.) But Skaggs "refused" to give the transcripts to Stultz. As a result, Stultz "lost his AEDPA statute of limitation in his criminal appeal process." (*Id.*)

On October 13, 2024, while in the presence of a CCI correctional officer, Plaintiff signed and sealed a letter to a private law firm regarding possible representation. (*Id.* at 42.) But sometime later, Skaggs "threw away" the letter. (*Id.*)

On November 22, 2024, Plaintiff received a "packet containing legal documents pertaining to his criminal court [case]." (*Id.* at 44.) The packet was "rejected and refused" for unclear reasons by an unspecified person or persons, which caused Stultz's criminal appeal to be "time barred." (*Id.*)

**C. <u>Discussion</u>**

In his FAC, Stultz names fourteen Defendants: Warden Fidencio Guzman, Selgado, Ruiz, Rodriguez, Moreno, Warden Montgomery, Associate Warden Arias, Zendejas, Newman, Reyes, Lara, Perez, Estrada, and Skaggs. (*Id.* at 1.)

Stultz lists claims pursuant to 42 U.S.C. § 1983 and under state law. In claim one he

alleges Defendants "subjected [him] to retaliation when prison officials were deliberately indifferent toward [him], in violation of the First Amendment right[s]." (*Id.* at 45.) In ground two, he alleges Defendants "subjected [him] to cruel and unusual punishments in violation of the Eighth Amendment." (*Id.* at 46.) In grounds three through five, Plaintiff raises state law claims of "medical negligence," "fraud," and "serious emotional distress." (*Id.* at 47–50.) And in ground six, he alleges Defendants deprived him of his First Amendment right to access-to-courts by tampering with his legal mail. (*Id.* at 51.)

**1. Rule 8**

First, the Court finds the FAC is subject to dismissal under Federal Rule of Civil Procedure 8. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that is too verbose, long, confusing, redundant, irrelevant, or conclusory may be dismissed for failure to comply with Rule 8. *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058–59 (9th Cir. 2011) (collecting cases upholding dismissals for those reasons). The purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996); *see also Cafasso*, 637 F.3d at 1058 (stating a complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint); *McKeever v. Block*, 932 F.2d at 798 (noting that under Rule 8(a) a complaint must contain "sufficient allegations to put defendants fairly on notice of the claims against them"). The Ninth Circuit has held that dismissal for failure to comply with Rule 8 is proper where "the very prolixity of the complaint made it difficult to determine just what circumstances were supposed to have given rise to the various causes of action." *McHenry*, 84 F.3d at 1178.

Here, Plaintiff's 57-page FAC includes a list of Defendants, in which Plaintiff also references various constitutional rights (*see* Doc. No. 5 at 4–16), a list of administrative appeals (*see id.* at 17–19), a lengthy recitation of facts containing allegations spanning over five years while Plaintiff was in custody at four different facilities (*id.* at 20–44), and a list of six grounds for relief, as noted above (*see id.* at 45–53). But in the section containing

grounds for relief, Plaintiff fails to clearly identify which individual Defendant(s) he alleges to have violated those grounds. He merely references "Defendants" collectively as to each ground.[3] (*See id.* at 45–51.)

And while the list of Defendants also broadly references several constitutional rights as to each Defendant, many do not correspond to the six grounds for relief listed later in the FAC. Specifically, in his list of Defendants, Plaintiff includes a short summary of each Defendant (such as their job title, the institution where they work). In addition, as to each individual Defendant listed, Plaintiff includes vague references to deprivations of his "rights to free speech and equal protection and due process of law." (*See e.g.*, *id.* at 4–16.) He also references "retaliation" as to each Defendant. (*Id.*) But Plaintiff's six headings stating his grounds for relief there is no mention of equal protection or due process of law. Nor, as noted above, does Stultz clearly identify which of the fourteen individual Defendants he alleges violated which right(s) listed in the grounds for relief. This is insufficient to put each individual defendant on notice as to which specific claims are raised against them. *See McKeever*, 932 F.2d at 798; *see also McHenry*, 84 F.3d at 1177.

This is not to say there are no discernable claims which might be teased out of the FAC. But as currently pleaded, it would require assumptions and guesswork by the Court to determine precisely which claims are raised against which individual defendants, and which specific factual allegations support claims as to that specific defendant.[4] "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *McHenry*, 84 F.3d at 1179. "Rule 8(e), requiring each

---

[3] The Court also notes that, while Plaintiff names fourteen defendants in the caption of the FAC, the following section listing defendants excludes Brian Skaggs. (*See id.* at 1, 4–16.)

[4] For instance, Plaintiff lists Brittanie Moreno as a Defendant and states she is a nurse. (Doc. No. 5 at 16.) The FAC, however, contains no specific factual allegations as to any individual named Moreno. There are allegations as to a "medical staff Defendant," (*see id.* at 33), which, in context, could possibly be a reference to Moreno, (*see id.*). But even construing the FAC liberally, the Court cannot make such an inference based on nothing more than an educated guess. *See Turner v. County of Los Angeles*, 18 Fed. Appx. 592, 596 (9th Cir. 2001) ("Even given the more generous pleading standards for pro se plaintiffs," a plaintiff must "provide [the] minimum factual basis needed to provide notice to [the] defendants.").

averment of a pleading to be 'simple, concise, and direct,' applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)." *Id.* at 1179–80. Here, as currently pleaded, Plaintiff's FAC must be dismissed. *See* Fed. R. Civ. P. 8.

**2. Claims**

While the FAC is subject to dismissal in its entirety, with leave to amend, for failure to comply with Rule 8, the Court also finds that, to the extent certain grounds for relief are discernable, Stultz has failed to state a claim for the reasons discussed below.

Stultz raises claims pursuant to 42 U.S.C. § 1983 and under state law. To state a claim under § 1983, a plaintiff must allege: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by "a person" acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Federal courts may also exercise supplemental jurisdiction over state law claims, but a plaintiff must first have a cognizable claim for relief under federal law. *See* 28 U.S.C. § 1367.

***a. Supervisory/Warden Defendants***

Plaintiff has not stated a claim against CAL Warden Montgomery, CAL Associate Warden Arias, and CEN Warden Guzman. As discussed in this Court's previous screening order, supervisory personnel are generally not liable under § 1983 for the actions of their employees. *See Iqbal*, 556 U.S. at 676. To do so, a plaintiff must allege facts indicating that the supervisory defendant either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy "so deficient that the policy itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Here, Stultz names Montgomery and Guzman in their individual capacities as CAL and CEN Wardens, respectively, and Arias as CAL Associate Warden, because they

"oversee[] . . . all staff." (Doc. No. 5 at 4, 5, 12.) But Plaintiff fails to allege facts showing any of these officials personally participated the alleged deprivations of constitutional rights; knew of specific violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *See Hansen*, 885 F.2d at 646. Therefore, Plaintiff has not stated any claim against Montgomery, Arias and Guzman. *See Ivey*, 673 F.2d at 268; *Iqbal*, 556 U.S. at 678; 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b).

***b. First Amendment Retaliation***

Stultz alleges "Defendants" violated his First Amendment rights by retaliating against him. As noted above, it is difficult to parse which Defendants Plaintiff alleges violated his First Amendment right to be free from retaliation and how. Nonetheless having reviewed the allegations liberally, as currently pleaded in the FAC, Stultz has failed to state a claim.

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities and as well as a right of meaningful access to the courts." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015). To state a claim for retaliation within the prison context has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted).

Here, Plaintiff fails to state a retaliation claim against any Defendant because he has failed to adequately allege any individual Defendant took adverse action against him *because* he was engaged in conduct protected by the First Amendment. *See id.* As noted above, a retaliation claim requires some allegation that the plaintiff was engaged in conduct protected by the First Amendment. In his FAC, Stultz alleges he was harassed and targeted by some Defendants because he had been "falsely convicted" of murdering an individual

whose family had unspecified ties to correctional staff. (Doc. No. 5 at 6.) For instance, Stultz alleges Defendant Zendejas "retaliate[ed]" against him because "he did not want [Stultz] exonerated" of his criminal conviction. (*Id.*) Stultz also states Zendejas "retaliated" against him by accusing him of being a "rat" and making veiled threats. In neither instance does Plaintiff provide any facts showing these things were done "because" he had engaged in conduct protected by the First Amendment.

The First Amendment protects, among other things, the right to "file prison grievances and to pursue civil rights litigation in the courts." *Johnson v. Ryan*, 55 F.4th 1167, 1201 (9th Cir. 2022). And while Stultz makes a vague reference to "filing a § 1983 Complaint," (Doc. No. 5 at 45),[5] and lists several administrative grievances he submitted in 2023 and 2024, (*id.* at 17–19), he does not tie any such protected conduct to a specific action taken thereafter by an individual defendant. A retaliation claim cannot rely solely on an adverse action that follows protected activity. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (explaining that a retaliation claim cannot rest on "the logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because of this'" (citation omitted)). Rather, a plaintiff must plausibly allege a link between his protected conduct and the defendant's retaliatory conduct. "[A]llegation[s] of a chronology of events from which retaliation can be inferred [are] sufficient to survive dismissal." *Watison*, 668 F.3d at 1114. But "mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014); *see also Flynn v. City of Santa Clara*, 388 F. Supp. 3d 1158, 1165 (N.D. Cal. 2019) (noting "a plaintiff's failure to allege [a defendant posssessed] any knowledge of the protected conduct results in a failure

---

[5] The Court takes judicial notice that Plaintiff has filed two civil actions in federal court pursuant to 42 U.S.C. § 1983. *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (stating a court may take judicial notice of proceedings "within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"). Plaintiff filed the first § 1983 action in this Court on October 10, 2024, *Stultz v. Doe #1, et al.*, No. 24-cv-01840-AGS-LR (S.D. Cal.), Doc. No. 1, and the case was dismissed on January 9, 2026, *Stultz v. Doe #1, et al.*, No. 24-cv-01840-AGS-LR (S.D. Cal.), Doc. No. 8. The instant § 1983 action was filed on October 17, 2025. (Doc. No. 1.)

to establish a plausible causal connection for the purposes of a retaliation claim."). Here, the allegations in the FAC are too vague and conclusory to demonstrate a specific link between alleged retaliation by any Defendant and the exercise of a First Amendment right. *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138–39 (9th Cir. 1989). Therefore, as currently pleaded, Plaintiff has failed to state a First Amendment retaliation claim against any Defendant. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b).

***c. Eighth Amendment***

Stultz alleges his Eighth Amendment rights were violated by "Defendants" when they were deliberately indifferent to his safety. (Doc. No. 5 at 46–47.) He states he was "assaulted and almost murdered in a jail cell" because he was categorized a "rat" by the family of the victim in his criminal case and "prison officials did nothing to prevent [it]." (*Id.* at 47.)

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id*. at 833; *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). But the failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate safety by failing to take reasonable steps to abate it. *Id*. at 837.

Neither negligence nor gross negligence warrant liability under the Eighth Amendment. *Id*. at 835–36 & n.4. An "official's failure to alleviate a significant risk that he should have perceived but did not, . . . cannot under our cases be condemned as the infliction of punishment." *Id*. at 838. Instead, "the official's conduct must have been

'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)).

As noted above, it is difficult for the Court to identify which of the fourteen Defendants Stultz asserts violated his Eighth Amendment rights. With that said, however, Stultz explicitly alleges that sometime in 2019 Defendant Zendejas made "verbal threats" against him and accused him of being a "rat" because his conviction. (Doc. No. 5 at 23.) Stultz also alleges Defendant Perez accused him of being a "rat" in March of 2020. (*Id.* at 22–23.) He states Perez also stood by while inmates taunted him, but did nothing. (*Id.* at 26–27.) In addition, he makes general claims that other Defendants verbally harassed him, or knew he was being harassed but by others and failed to take action to protect him. (*See e.g.*, *id.* at 24, 25.)

First, "verbal harassment generally does not violate the Eighth Amendment." *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (concluding inmate's Eighth Amendment claim based on a prison guard's "disrespectful and assaultive comments" to inmate were properly dismissed); *Ragsdale v. Medrano*, No. 18-cv-00414-AWI-JDP, 2018 WL 6528423, at *3 (E.D. Cal. Dec. 12, 2018) ("Allegations of name-calling, verbal abuse, or threats fail to state a constitutional claim."); *see also Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1221 (S.D. Cal. 1997) (citation omitted) ("Although courts do not condone name-calling, 'the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons.'").

The Ninth Circuit, however, has held that under certain circumstances, prison officers telling inmates that someone is a "snitch" with the intent of having an inmate harmed by other inmates could constitute a violation of the inmate's right to be protected from violence while in custody. *Valandingham*, 866 F.2d at 1138. Here, Stultz alleges that while he was in custody at CAL, Zendejas and Perez called him a "rat" in December of

2019 and March of 2020, respectively.[6] (Doc. No. 5 at 23, 26.) Stultz states that he "was assaulted and almost murdered in a jail cell because I was categorized a rat." (*Id.* at 47.) Specifically, he alleges he was attacked by his cellmate at CBDC, a Riverside County jail facility, on March 10, 2023. (*Id.* at 35.) While the Court takes this attack seriously, there are no allegations in the FAC indicating the altercation at CBDC was proximately caused by the purported statements made by Zendejas and Perez—both officers at a different institution, operated by a different entity—which were alleged to have been made three or more years prior to Plaintiff's injury. As such, Plaintiff has not stated a plausible claim. *See Lemire v. Cal. Dep't of Corrs. and Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) ("[P]laintiffs alleging deliberate indifference must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries.").

Stultz also appears to allege Defendants Newman and Lara failed to protect him, in violation of the Eighth Amendment, when they took no action after Stultz requested transfer to another facility. Specifically, Stultz states that in October of 2019 he asked Newmen facilitate his transfer but Newmen "ignored his safety concerns" and failed act. (Doc. No. 5 at 24.) In December of 2019, Stultz requested Lara "put him up for transfer" because of his safety concerns, but Lara "did nothing." (*Id.* at 25.) Stultz alleges that as a result, Lara failed to prevent his "brutal assault from inmates." (*Id.*)

As currently pleaded, Stultz's allegations as to Newmen and Lara are insufficient to show that in October and December of 2019, he faced an objectively serious threat to his safety. Even assuming such a threat existed, Stultz has failed to plausibly allege that Newmen and/or Lara were deliberately indifferent to the purported risk at that time. To state such a claim, a plaintiff must specifically allege both that the defendant was personally aware of the facts from which he could draw an inference that a substantial risk existed, *and* "[the defendant] must also draw the inference." *See Farmer*, 511 U.S. at 837. In his

---

[6] It is unclear from the facts alleged whether other inmates overhead these statements. (Doc. No. 5 at 23, 26.)

FAC, Stultz merely alleges that Newmen knew of his "issues," (*see* Doc. No. 5 at 24), and Lara was aware of "the events . . . throughout his stay at Calipatria," (*id.* at 25). These vague and conclusory allegations are insufficient to state a plausible claim that either Defendant was subjectively aware that a substantial risk to Plaintiff's safety existed in late 2019. Finally, while Stultz states he was assaulted by inmates in 2021, he has not sufficiently alleged the actions of Newmen and Lara, taken in 2019, were the proximate cause of his injuries. *See Lemire*, 726 F.3d at 1074. Therefore, as currently pleaded, Stultz fails to state an Eighth Amendment claim as to any Defendant. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b).

***d. First Amendment Access to Courts***

Plaintiff alleges that while he was confined at CCI, located in Kern County, California, Defendant Skaggs violated his First Amendment right to access the courts when he failed to properly send and deliver mail related to state court proceedings.[7] (Doc. No. 5 at 41–43.)

As pleaded, Stultz has failed to state a First Amendment access to court claim against Skaggs. Prisoners have a First Amendment right of access to the courts which guarantees them the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 346, 356 (1996). To state an access to courts claim, a prisoner plausibly allege that the violation caused him an "actual injury" by hindering his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement. *See id.* at 350. The "underlying cause of action,

---

[7] The Court notes that under the Federal Rule of Civil Procedure, a plaintiff may only join claims against multiple defendants when those claims (a) arise out of the same transaction, occurrence, or series of transactions or occurrences and (b) present questions of law or fact common to all defendants named. *See* Fed. R. Civ. P. 20(a). As pleaded in the FAC, it is not clear Stultz's claim against Skaggs, the only Defendant at CCI, arises out of or is related to the same transaction or occurrence or series of transactions or occurrences, and raises questions of law or fact common to the other thirteen Defendants. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (stating joinder is improper if there is not "similarity in the factual background" and noting that general allegations are not sufficient to constitute similarity when the specifics are different).

whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). To do so, the "predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id*. at 416.

Here, Plaintiff falls well short of the requirement that he allege facts sufficient to show that Skaggs caused actual injury to nonfrivolous legal claims. "Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal to [an access to courts] claim." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008). First, Stultz alleges that on July 23, 2024, Skaggs "th[ew] away" a letter related to an application for writ of habeas corpus filed in the California Supreme Court, (Doc. No. 5 at 41), but fails to explain what the letter contained and/or how this frustrated his case. Second, he states that on August 29, 2024, CCI received a package containing transcripts related to Stultz's criminal proceedings, but Skaggs refused to give Stultz the transcripts, (*id.* at 43). Stultz contends this caused him to be "time barred in the California Superior Court" and "los[e] his AEDPA statute of limitations." (*Id.*) Yet he fails to describe the "predicate claim" with enough particularity to determine the "arguable nature" of the underlying claims(s). *See Christopher*, 536 U.S. at 415. Third, Plaintiff alleges he was unable to retain counsel because, on October 13, 2024, Skaggs purportedly "threw away" a letter to a private attorney Stultz sought to have represent him. (Doc. No. 5. at 42.) Again, however, he alleges no facts describing what action and nonfrivolous claims he was impeded from pursuing as a result.

In sum, as to all three instances, Plaintiff provides fails to identify to the nature of the predicate claims, much less allege sufficient facts to determine whether they were non-frivolous. *See Christopher*, 536 U.S. at 417–18 (requiring the complaint "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it"); *Lewis*, 518 U.S. at 353 n. 3 ("Depriving someone of an arguable (though not yet established) claim inflicts actual

injury because it deprives him of something of value-arguable claims are settled, bought and sold. Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all, except perhaps the punishment of Rule 11 sanctions."). Thus, because as pleaded the FAC fails to adequate allege actual injury by showing a nonfrivolous claim was frustrated, Plaintiff has failed to state an access-to-courts claim against Skaggs. *See Alvarez*, 518 F.3d at 1155 n.1; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b).

***e. Equal Protection and Due Process***

While Stultz does not include equal protection and due process in his listed grounds for relief, because he references both several times throughout the FAC, (*see* Doc. No. 5 at 4–16, 46, 49), the Court will briefly address them.

First, as pleaded, the FAC lacks factual support for an equal protection claim. An equal protection claim may be established by showing that defendants intentionally discriminated against a plaintiff based on his membership in a protected class, *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702– 03 (9th Cir. 2009); *Serrano v. Francis*, 345 F.3d 1071,1082 (9th Cir. 2003), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Dep't of Agr*., 553 U.S. 591, 601–02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Stultz alleges no facts indicating he is part of a protected class or that similarly situated individuals were treated differently.

Likewise, Stultz's vague references to due process are insufficient to state a claim. There are two types of due process claim: procedural and substantive. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). "A procedural due process claim hinges on proof of two elements: (1) a protectible liberty or property interest; and (2) a denial of adequate procedural protections." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (simplified). Substantive due process rights protect against "arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). "To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation

of life, liberty, or property." *Nunez v. City of Los Angleles*, 147 F.3d 867, 871 (9th Cir. 1998). Here, Plaintiff has not plausibly alleged he was deprived of a protected property or liberty interest, or denied adequate procedural protections. *See Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004).

In sum, Plaintiff has not stated an equal protection or due process claim as to any Defendant. *Iqbal*, 556 U.S. at 678; 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b).

***f. State Law Claims***

Plaintiff also raises state tort claims including "medical negligence," "fraud," and "serious emotional distress." (*See* Doc. No. 5 at 47–50.**)** The claims of medical negligence and fraud appear to be related to Stultz's allegations that when tested for COVID-19, his DNA was somehow "mishandled." (*Id.* at 30, 32–33.) His claim of "emotional distress" appears to stem from the totality of the underlying allegations.

As discussed in this Court's previous Order, state law claims are not sufficient to state a claim for relief under § 1983, which requires a deprivation of federal constitutional or statutory right. *See Paul v. Davis*, 424 U.S. 693 (1976). Federal courts may exercise supplemental jurisdiction over state law claims, but a plaintiff must first have a cognizable claim for relief under federal law. *See* 28 U.S.C. § 1367.

In addition, Stultz fails to state a claim for medical negligence and/or fraud based on his allegations that his DNA was improperly handled in some attempt to impact his criminal conviction. (*See* Doc. No. 5 at 30, 32–33.) A state medical negligence claim has following elements: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Turpin v. Sortini*, 31 Cal. 3d 220, 229–30 (Cal. 1982). And "[t]he elements of fraud are misrepresentation, knowledge of falsity, intent to induce reliance on the misrepresentation, justifiable reliance on the misrepresentation, and resulting damages." *Reeder v. Specialized Loan Servicing LLC*, 52 Cal. App. 5th 795, 803 (Cal. Ct. App. 2020).

Here, among other things, Stultz alleges no actual loss or damages, much less that such were proximately caused by Defendants involved in his COVID-19 testing.

As to his claim "serious emotional distress," Stultz appears to raise it collectively against all Defendants based on the entirety of the allegations raised in the FAC. Liberally construed as a claim of "intentional infliction of emotional distress," the elements are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (Cal. 1991). Here, as with his other grounds for relief, this claim is asserted against numerous Defendants collectively, with no specific allegations as to what any individual Defendant did that allegedly constituted extreme outrageous conduct.

In addition, as also discussed in this Court's previous screening Order, the California Tort Claims Act ("CTCA") requires a plaintiff seeking monetary damages against a public employee to have first presented the claim to the California Victim Compensation and Government Claims Board ("Board"). The Board must have either acted on the claim or the time for doing so must have expired. Cal. Gov. Code § 810 *et seq*. Compliance with this "claim presentation requirement" constitutes an element of a cause of action for damages against a public entity or official. *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1244 (Cal. 2004). Thus, state tort claims included in a federal action filed pursuant to 42 U.S.C. § 1983, may proceed only if the claims were first presented to the state in compliance with the claim presentation requirement. *Id*. at 1239; *see also Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988) (affirming district court's dismissal of state tort claims for failure to allege compliance with California tort claim procedures). Plaintiff has again failed to allege compliance with the CTCA as to his state tort claims and based on that alone, they are subject to dismissal for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b).

///

**D. <u>Leave to Amend</u>**

Although the FAC must be dismissed for the above reasons, because Plaintiff is proceeding pro se and may be able to cure the deficiencies discussed above, the Court is **GRANTS** him leave to amend. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.").

Plaintiff should consider the legal standards and discussion of the pleading deficiencies identified above in preparing any amended pleading. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) ("The requirement that courts provide a pro se litigant with notice of the deficiencies in his or her complaint helps ensure that the pro se litigant can use the opportunity to amend effectively.").

## III. CONCLUSION AND ORDER

Based on the foregoing, the Court:

1. **DISMISSES** the First Amended Complaint in its entirety for failure to comply with Federal Rule of Civil Procedure 8, and for failure to state a claim against any Defendant pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1).

2. **GRANTS** Plaintiff **sixty (60) days** leave from the date of this Order in which to file a Second Amended Complaint which cures the deficiencies of pleading noted in this Order. Plaintiff's Second Amended Complaint must be complete by itself without reference to his original Complaint. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to timely file a Second Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v.*

*Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: October 14, 2026

Hon. Anthony J. Battaglia
United States District Judge